GILES *against* BAREMORE and others.

Presumptions, arising from a lapse of time, and the circumstances of the case, of the payment of a debt, are allowed as much in this Court, as in a Court of law. This Court makes the presumption on the facts before it, without sending the case to law.

Where a defendant, in his answer, does not directly insist on the presumption of payment; but declares his entire ignorance as to the fact, and insists on his having a complete title to the premises mortgaged to secure the debt, having purchased *bona fide*, from the mortgagor, without notice, &c., and been in the quiet possession for above thirty years: *Held*, that this was sufficient to entitle him to raise the objection, at the hearing, of a presumption of payment of the mortgage debt.

Presumptions of payment, founded on lapse of time, are matter of evidence ; and not, in most cases, *proprio jure*, matter of plea in bar.

Where a mortgage had been executed forty years, and there was an interval of 35 years, from the time the State were supposed to have acquired an interest in the debt, by the attainder of the mortgagee, to the commencement of the suit, and no interest paid or demanded, the mortgage was presumed to have been satisfied, either to the mortgagee, before his attainder, or to proper agents of the State, afterwards.

A mortgage is no evidence of a subsisting title, if the mortgagee never entered, and there has been no interest paid for twenty years.

THE bill, (filed *April* 26th, 1815,) stated, that on the 1st of *March*, 1775, *Nicholas Delavergne*, of *Charlotte*, in the county of *Dutchess*, executed a bond and mortgage to *William Axtell*, of the city of *New-York*, for £282 8s. 8d., (706 dollars and 8 cents,) payable on the first day of *May*, following, with interest. The land mortgaged consisted of a moiety of 2,400 acres, and another parcel of 206 acres. The mortgage, containing the usual power of sale, was registered *Feb.* 17th, 1776. *W. A.* the mortgagee, being attainted under the act of the 22d of *October*, 1779,

*November 16th and December 21st.*

all his estate, real and personal, became forfeited; and the bond and mortgage, by reason thereof, became vested in the people of this State. That by several subsequent acts of the legislature, it was made the duty of every citizen indebted to any person, whose estate was forfeited, to disclose such debts, and to make payment thereof, in the manner prescribed in those acts. That *N. D.* never disclosed, or made payment of, the debt due by him to *W. A.,* but fraudulently concealed it. That *N. D.* died in 1780, and his executrix, who proved his will and was qualified in *June,* 1786, died without disclosing, or paying, the debt according to the act, and the debt remained due and unpaid. That *N. D.,* in his life time, sold and conveyed his equity of redemption in the mortgaged premises to various persons, and no part of the lands came to his heirs by devise or descent. That the defendant *B.,* and divers other persons, unknown to the plaintiff, are in possession of parcels of the mortgaged premises, the quantity and boundaries of which are unknown to the plaintiff. That by an act of the legislature, passed *March* 25th, 1814, it was made lawful for the plaintiff to sue for and recover, in his own name, all such debts as were due and owing to *William Axtell,* deceased at the time of his attainder, which remained unpaid, and to appropriate the moneys to his own use; provided always, that nothing therein contained should be construed to deprive the defendants in such actions of any legal defence. That the mortgage debt, above mentioned, remains due. with all the interest thereon, and the mortgage has become absolute, and the defendants refuse to pay, &c. *Prayer,* that the defendant be decreed to come to an account with the plaintiff, for the principal and interest due on the mortgage, and to pay the same, with costs, or that the equity of redemption be foreclosed.

The defendant *B.,* in his answer, admitted, that a bond and mortgage had been executed by *N D.,* as stated in the bill; that *N. D.* died in 1780, having appointed his wife sole ex-

ecutrix, &c. but he knew nothing of the other charges in the bill. He stated, that he was in possession of 180 acres of the tract of land, last described in the mortgage ; and set forth the names of the persons in possession of the residue thereof, in different parcels, purchased by them of the defendant. That *James Livingston,* formerly sheriff of *Dutchess* county, executed a deed to the defendant, dated *January* 5th, 1785, reciting, that he, *J. L.,* on that day, under a *fieri facias,* issued on a judgment in the Supreme Court, in favour of *Mary Verplanck,* and *Charles Crommeline,* against *N. D.,* had sold to the defendant, for the consideration of 300 pounds, 206 acres of land, &c. which was the same land in possession of the defendant, and the persons named by him, and part of the premises described in the mortgage. That the sheriff's deed was proved *April* 16th, 1796; and the judgment, on which the execution was issued, was docketted the 16th of *September,* 1765. That the conveyance to the defendant by the sheriff, was *bona fide,* and for a valuable consideration. That the tract of land, first described in the mortgage, was in the possession of various persons, whose names were stated, in different parcels, all of whom held under the defendant. That *John De Witt,* formerly sheriff of *Dutchess,* by his deed, dated *August* 27th, 1793, under a sale made by virtue of a *fieri facias,* issued on a judgment, docketted *April* 26th, 1755, revived by *scire facias,* in favour of *James M'Evers* and *Charles Ward Apthorp,* executors, of lands of which *N. D.* died seised, and *Mary D., E. D.,* and *W. D.,* were returned tenants, conveyed to the defendant 700 acres of land, described in the sheriff's deed, being part of the mortgaged premises, for the consideration of £172 0s. and 3d. That the real quantity of acres, as comprised within the courses and distances, was 1,471 acres, as was publicly understood at the time of sale. That the judgment and proceedings were *bona fide,* and the judgment on the *sci. fa.* was docketted the 15th of *October,* 1792, for £160 10s. and 3d.

1821.

GILES
v.
BAREMORE.

1821.

GILES
v
BAREMORE.

The defendant further stated, that he was "ignorant whether *N. D.* did or did not, during his life time, make payment of the debt, as in and by the acts mentioned in the bill, was directed, nor did he know whether the said debt was still unpaid or not. Nor whether *Mary D.*, the executrix of *N. D.*, died without making payment of the debt." That "the defendant was well advised, that he had an ample and complete title to the mortgaged premises, which he purchased for a *bona fide* and valuable consideration by virtue of the sales under the two several judgments of record against *N. D.*, long previous to the date of the bond and mortgage ; and that the defendant, and the persons named as being in possession under him, have been in the peaceable and quiet possession thereof, since the date of the several deeds, above mentioned, from *James Livingston* and *John De Witt*, to the defendant."

Answers were, afterwards, in *April*, 1817, put in by the several persons named by the defendant *B.* as being in possession of different parcels of the land under him, stating that they were *bona fide* purchasers under the defendant *B.* for a valuable consideration, and without notice of any incumbrance, and insisting upon the presumption of payment, &c.

*November* 16th, 1821.   The cause came on to be heard, on the pleadings and proofs.

*A. Burr*, for the plaintiff.

*Woodward* and *P. Ruggles*, contra.  They cited 12 *Johns. Rep.* 242.   3 *Johns. Rep.* 383. 386.   *Cowp.* 102. 214, 215. 2 *Vesey*, jun. 11. 272. 280.   3 *Johns. Ch. Rep.* 280.

THE CHANCELLOR. *James Baremore* may be considered as the principal defendant, for all the other defendants in possession of any part of the mortgaged premises, derived

title from him.  He, if any person, ought to be first called upon to pay the mortgage debt.  Indeed, it was admitted, upon the argument, by the counsel for the plaintiff, that *Baremore* was in possession of a sufficient portion of the mortgaged premises to satisfy the debt, and that he had no desire to press the other defendants, because, if they were obliged to pay, they would be entitled to resort over to *Baremore* for their indemnity.  If the claim can be sustained against any of the defendants, it certainly can against him.

Let us then examine the case as it stands against *Bare-more.*

One of the points, made at the hearing on the part of *Baremore,* as well as on the part of the other defendants, was, that the mortgage debt is to be presumed, from the lapse of time, to have been paid and extinguished.  All the other defendants, except *Baremore,* insist in their answers upon this presumption of payment.  He does not state that ground in so many words, but he states enough in his answer, to enable him to raise that objection, at the hearing, to the demand.  He declares his ignorance, whether *Nicholas Delavergne,* the mortgagor, and who he says died in the the year 1780, made payment of the debt, or whether his executrix made payment of the debt, or whether the mortgage debt is still due and unpaid or not.  This was saying enough to entitle him to avail himself of any presumption, against the present existence of the debt, that the facts in the case would warrant.  He insists further, that he hath an ample and complete title to the mortgaged premises, which he purchased at sheriff's sale, as stated particularly in his answer, and that he and the other persons, who claim under him, have had peaceable and quiet possession, since the date of those sheriffs' deeds in 1785, and 1793.

The date of the deed, under which he holds the land, in his actual possession, is the 5th of *January,* 1785, and his

Presumptions of payment, founded on lapse of time, are matter of evidence, and not, in most cases, proprio jure, matter of plea in bar.

This Court, equally with a Court of law, or jury, may draw the conclusion; and if the defendant in his answer does not waive the benefit of the presumption, but insists on his ignorance of the fact of payment, necessarily arising from his being a stranger to the transaction, and upon the staleness of the demand, he may raise the objection at the hearing.

possesion, in the character of owner, has been continued from that time, which makes a period of thirty years before the commencement of the suit.

These presumptions of payment, founded on the lapse of time, are matter of evidence resulting from the facts in the case, and are not in many cases, *proprio jure*, a matter of plea in bar. They are conclusions to be drawn by this Court, from the proofs, in like manner as they are to be drawn by a jury upon a trial at law, and if the defendant does not waive the benefit of the presumption in his answer, but insists upon his ignorance of the fact, whether payment has or has not been made, and which ignorance is necessarily founded upon his being a stranger to the mortgage, and upon the staleness of the demand, he has a right to raise the objection at the hearing. He has a right to insist upon " his ample and complete title," and to rest it upon any of the facts or presumptions warranted by the case. In *Delo-raine* v. *Browne*, (3 *Bro.* 633.) Lord *Thurlow* overruled a demurrer taken to a bill, on the ground of the staleness of the demand, but admitted, that the circumstance would have its weight, or might be urged at the hearing.

These presumptions do not always proceed, as has been repeatedly observed, (Lord *Mansfield*, in *Eldrige* v. *Knott*, *Cowp.* 214. and Sir *William Grant*, the Master of the Rolls, in *Hillary* v. *Waller*, 12 *Vesey*, 252.) on the belief, that the thing presumed has actually taken place. A grant, which is of course a matter of record, may be presumed against the crown, not that the Court really thinks, as Lord *Mansfield* has observed, that a grant has been made, because it is not probable a grant should have existed without its being upon record, but they presume the fact for the purpose, and from a principle, of quieting the possession.

The defendant says he is ignorant whether or no the debt has been paid ; and in *Hillary* v. *Waller*, (*ubi supra*,) the Master of the Rolls says, " It is because there are no means

of creating belief or disbelief, that such general presumptions are raised." Instead of belief, which is the foundation of the judgment upon a recent transaction, the legal presumption in matters of antiquity holds, as he observed, the place of particular and individual belief.

These presumptions, to be drawn by the Courts, in the case of stale demands, are founded in substantial justice, and the clearest policy. If the party, having knowledge of his rights, will sit still, and, without asserting them, permit persons to act as if they did not exist, and to acquire interests, and consider themselves as owners of the property, there is no reason why the presumption should not be raised. It is, therefore, well settled, that the presumption, that a demand has been satisfied, prevails as much in this Court, as it does at law. Claims, the most solemnly established upon the face of them, will be presumed to be satisfied after a certain length of time. Matters of record, deeds, and even a private statute, may be presumed to make good a title. A Court of Equity, makes the presumption on the facts before it, without sending the case to law, provided a jury, upon the same facts, ought, and would, so presume. The presumption resolves itself into this, that a man will naturally enjoy what belongs to him. These are principles of decision adopted and sanctioned in a variety of cases, and by a succession of learned judges in the *English* Court of Chancery; and their solidity is not to be questioned, and they apply with the utmost propriety and force to the present case. (See in *Jones* v. *Turberville*, 2 *Vesey*, jun. 11. *Eyre* and *Wilson*, commissioners; and the Master of the Rolls, in *Pickering* v. *Lord Stamford*, 2 *Vesey*, jun. 272. 583. and also in *Hillary* v. *Waller*, 12 *Vesey*, 265, 266, 269. 270.)

The mortgage here, was executed 40 years and upwards before the commencement of this suit, and there was an interval of 35 years between the time, that the people of this

Presumptions drawn by Courts against stale demands are founded in justice and policy.

State are supposed to have acquired an interest in the bond and mortgage by the attainder of *Axtell*, the mortgagee, and the assignment of their right and interest to the plaintiff, by the act of the legislature of *March*, 1814. It will not be disputed, that the rights of the original mortgagor, and of those persons claiming under him, were not impaired either by the attainder of *Axtell*, or the transfer of his right to the plaintiff. Their means of defence are the same against the plaintiff, as they would have been if *Axtell* had not forfeited his interest, and was now, in proper person, seeking to foreclose his mortgage. Here then is an outstanding mortgage of 40 years, and no interest paid or demanded, and possession and a claim of ownership regularly continued in and under the title of the mortgagor, down to the filing of the bill. Can there exist a much stronger case on which to establish the presumption of satisfaction? The mortgage was registered early in the year 1776, and the people of this State, through their regular constitutional trustees, and ministers or agents, are presumed to have known of that record. If a grant may be presumed, though there be no record of it, a payment to the competent authorities of this State by *Nicholas Delavergne* in his life time, or by his lawful representatives, is more readily to be presumed. A payment may even be presumed to have been made to the original mortgagee, between the time of the registry of the mortgage in *February*, 1776, and his subsequent adherence to the enemies of this State. A payment to him during that interval of time, would have been a valid payment.

A mortgage is no evidence of a subsisting title, if the mortgagee never entered, and there has been no interest paid for twenty year

It is a well settled rule, both at law and equity, that a mortgage is not evidence of a subsisting title, if the mortgagee never entered, and there has been no interest paid or demanded for 20 years. These facts authorize and require the presumption of payment. This rule was declared by Lord *Holt*, in *Wilson* v. *Witherby*, (*Buller's N. P.* 110.) and in a case which the Master of the Rolls, in *Hillary* v. *Waller*,

(12 *Vesey*, 266.) said he recollected to have arisen before Lord *Mansfield.* A mortgagee brought his ejectment, the deeds and bond were proved ; but all went for nothing, because he had not received any money upon the mortgage for 25 years, though living within a street of the mortgagor. Upon that fact the mortgage was considered satisfied. So, again, in *Oswald* v. *Legh,* (1 *Term Rep.* 270.) 20 years without demand, was held by the K. B. to be *of itself* presumption, that the bond was paid ; and Lord *Thurlow,* in *Nash* v. *White,* (3 *Bro.* 289.) in the very case of a bill to foreclose a mortgage, admitted the rule, that if there be no possession, or demand, or interest paid, for 20 years, it raised the presumption of payment. The same rule of presumption has been adopted in favour of the mortgagee, when he has had possession for 20 years, and the mortgagor will not be let in to redeem. (3 *Atk.* 313. *anon.*) Many of the cases go so far as to allow a demurrer to a bill to redeem, when it appears by the bill itself, that the mortgagee has been in possession for 20 years, and nothing to rebut the presumption is stated. (*Jenner* v. *Tracy,* 3 P. *Wm.* 287. *note B. Frazer* v. *Moor, Bunb.* 54. *Bockford* v. *Close,* cited in 3 *Bro.* 644.) and the presumption, arising from length of time, may always be raised, unless the defendant, in his answer, as in *Proctor* v. *Oates,* (2 *Atk.* 140.) absolutely submits to the demand. In that last case, Lord *Hardwicke* said, there was no colour for the redemption, (for the mortgagee had been in possession 25 years,) but on the ground of the defendant's submission, he decreed an account.

The Supreme Court has more than once recognized the rule, that a mortgage is not a subsisting title, if the mortgagee never entered, and there has been no foreclosure, nor payment of interest within 20 years. (7 *Johns. Rep.* 283. 3 *Johns. Rep.* 386.) But the case of *Jackson* v. *Wood,* (12 *Johns. Rep.* 242.) is worthy of particular notice, for it is a case that is closely, and in all its parts, analogous to

1821.

GILES
v.
BAREMORE.

the one before me.   In that case, a mortgage was given in *April*, 1775, to *John Munro*, who was afterwards attainted of adhering to the enemy ; an ejectment was brought upon this mortgage in the name of the people ; and on the trial, one ground of defence was, possession for 20 years under a claim of right and presumption of payment.   The *chief justice* told the jury, that though the people were vested with the rights of the mortgagee, the jury had a right to presume payment from the lapse of time.   On the motion for a new trial, the Supreme Court observed, that there was no sufficient evidence to rebut the presumption of payment arising from the lapse of time, as here was no entry by the mortgagee or those under him, nor demand, or interest paid, for 20 years.   The jury, as they held, were warranted to presume an extinguishment of the mortgage.

What the jury were warranted to infer in that case, it is equally my duty to presume in this.   This view of the subject relieves me from the necessity of discussing the merits of the title put forward by the defendants, under the two deeds of 1785, and 1793; and on this single point of the presumption and conclusion of law, founded on the lapse of time, that the mortgage is no longer a subsisting evidence of debt or title, I shall dismiss the bill as against all the defendants, without costs.

*Decree accordingly.*