BOYD AND HANCE
vs.
HARRIS ET AL.
AND
HARRIS ET AL.
vs.
LAVIELLE ET AL.

} DECEMBER TERM, 1850.

[LIMITATIONS—BONDS GIVEN BY HEIR ENTITLED TO ELECT LIABLE TO THE
PRESUMPTION OF PAYMENT, LIKE MORTGAGES.]

BONDS given by the heir entitled to elect under the act to direct descents, which, by the terms of that act, are made liens on the lands, for the purchase of which they are given, until paid, though not within the statute of limitations, are yet liable, like mortgages, to presumptions of payment : and, when the circumstances are such as would induce the court to presume the payment of a mortgage, the same presumption will be made with reference to these bonds.

It is a well settled rule, both at law and in equity, that a mortgage is not evidence of a subsisting debt, if the mortgagee never entered, and there has been no interest paid or demanded for twenty years : these facts, alone, authorize and require the presumption of payment.

As courts of equity have adopted the period of twenty years as 'a bar to the right of redemption, in imitation of the first clause of the statute of limitations, so they have also adopted the ten years, fixed in the proviso, for prosecuting after disability removed.

In this case, upwards of twenty years elapsed from the date and forfeiture of the bond, given by the heir entitled to elect, and sixteen from the time when the heir in whose favor it was given attained age, before demand was made. It was HELD—that the claim could not be asserted as a lien.

[The agreement and statement of facts, upon which this cause came before the court, is as follows :

"In this case, various questions have arisen between James Kent, as a creditor of Alexander Harris, deceased, and as purchaser of parcels of the real estate of the deceased, on the one part ; and Mackall Harris and others, heirs at law of Joseph Harris, deceased, and as such, claiming to be creditors of the said Alexander Harris, deceased.

An amicable adjustment of these questions, is, in many respects, desirable ; and, the counsel for the parties believe, that

an intimation of the Chancellor's opinion on the question here-inafter stated, will enable them to settle the entire controversy. They, therefore, respectfully submit the following statement and points, for his honor's decision :

Alexander Harris was the eldest son of said Joseph Harris, and as such, under a proceeding in Calvert County Court to make partition, elected to take his said father's real estate at the valuation thereof made by the commissioners. He gave bond to the state, conditioned for payment to the several co-heirs, of their respective proportions of the purchase money. A transcript of the record of such proceedings will be found amongst the proceedings in this cause, and is to be taken as part of this statement.

Alexander was appointed guardian to Mackall Harris, one of the heirs at law of Joseph Harris, deceased, and the term of credit having expired, he charged himself, in his account as guardian, with his ward's share of the proceeds of the father's real estate : and this charge was continued in the successive accounts passed by the guardian, until the ward attained his full age of twenty-one years. The balance made due by the last and final account (which included a part of his share of the proceeds of said real estate) is yet unpaid. More than twenty years have elapsed since the election and giving bond as aforesaid, and a credit, as to part of the purchase money had expired, and Mackall Harris attained his full age, more than ten, but less than twenty, years prior to making his claim. He now claims that the land in the hands of the purchaser, under Alexander, remains charged with the balance of his share of the purchase money, yet actually unpaid by Alexander. The claim is resisted, and the question is submitted—

1st, Whether the expiration of the term of credit and charge by the guardian, in his accounts, discharged the land from the lien created by the act of 1820, ch. 191, sec. 21, in favor of the heir ?

2d, Whether the claim is based by limitations ?

In addition to the facts before stated, it is admitted, that the claim was first made on the 15th of September, 1848.

The bond bears date on the 11th of October, 1826; and the purchase money is payable, as directed by the order of the court, in one, two and three years.

The court, in approving and accepting the bond, ordered, that upon payment of the principal and interest due on said bond, to the several persons entitled to receive the same, the commissioners aforesaid should execute to the said Alexander, a deed conveying to him said estate. It is uncertain, whether any deed was, in fact, executed.

After Mackall attained his full age of twenty-one years, in 1832, and down to the death of Alexander, in 1845, sundry dealings took place between them, forming an extended account of charges and debts; and, in said account, the said Alexander is charged with the balance made due from him, as guardian, before stated.

In the event of a decision of the former questions, favorably to the demand, it is then submitted—

3d, Whether such dealings ought to bar the claim, in equity, as against the said real estate?

It is already stated, that the claim was made on the 15th of September, 1848. It was then made by bill in chancery, filed by Mackall against the heirs of Alexander, to enforce the lien. The said James Kent claims, under a purchase made by him in the year 1848-9, from the sheriff who sold, under executions levied, before Alexander's death.

The parties agree, that the Chancellor's decision of the aforesaid question shall be final, in settlement of the aforesaid claims, and from said decision there shall be no appeal."

The opinion deciding the above questions was delivered as follows:]

THE CHANCELLOR:

The question presented by the agreement of the parties, in this case, and upon which, it is thought, the opinion of the court will facilitate the settlement of several points of difference is, whether the bond given by Alexander Harris to the state of Maryland, under the 21st section of the act of 1820, ch. 191, con-

ditioned to pay his co-heirs their proportions of the estate, which he, as eldest heir elected to take, is now, under the circumstances stated in said agreement, to be treated as a lien on said estate, in favor of Mackall Harris, one of the heirs, as against purchasers under, and creditors of, Alexander Harris.

The bond bears date on the 11th of October, 1826, and the money was payable in one, two and three years ; and Mackall Harris attained the age of twenty years, in 1832. Alexander Harris died in the year 1845 ; and, on the 15th of September, 1848, Mackall Harris filed his bill in chancery against the heirs of Alexander to enforce the lien, and this, it is admitted, was the first time the claim was made. When the claim was made, then, more than twenty years had elapsed from the date of the bond, and from the period when the first installment become due, and sixteen years after the party making the claim had attained his majority. The statement of facts also shows, that Alexander Harris became the guardian of Mackall Harris, and after the bond became due, charged himself, in his accounts as guardian, with his ward's share of the estate ; and, this charge was continued in the successive accounts, passed by the guardian in the Orphans Court, until his ward became of age ; the balance appearing to be due by the last account, which included a part of his proportion of the proceeds of the said real estate, remaining unpaid. And, it is further admitted by the parties, as a fact in the cause, that after Mackall Harris attained the age of twenty-one years, in 1832, and down to the death of Alexander Harris, in 1845, there were extensive dealings between them, consisting of charges and credits on both sides ; and, that in the accounts of these dealings, Alexander Harris is charged with the balance due him as guardian, as before stated.

Bonds given by the heir entitled to elect, under the act to direct descents, are, by the terms of the act of Assembly, made liens on the lands, for the purchase of which they are given until paid ; and, therefore, they are supposed not to be within the statute of limitations. But, though not within these statutes, like mortgages, they are liable to presumptions

of payment; and it is thought to be quite clear, that when the circumstances are such, as would induce the court to presume the payment of a mortgage, the same presumption would be made with reference to these bonds. "It is," says Chancellor Kent, "a well settled rule, both at law and in equity, that a mortgage is not evidence of a subsisting debt, if the mortgagee never entered, and there has been no interest paid or demanded for twenty years." 5 *Johns. Ch. Rep.*, 552. These facts, alone, authorize and require the presumption of payment.

In this case, upwards of twenty years have elapsed from the date and forfeiture of the bond, by the non-payment of the first installment, which became due in October, 1827. It is true, Mackall Harris was then a minor; but, he attained his full age in 1832, and did not make demand of the bond until September, 1848, sixteen years subsequently. And if, therefore, by analogy, he would be entitled to the benefit of the proviso in the statute of 21st James, which courts of equity have adopted, as applicable to the right of the mortgagor to redeem, he comes too late; as the proviso only saves the right of infants, &c., if they bring their action within ten years after the disability removed. 3 *Johns. Ch. Rep.*, 135; 1 *Powell on Mortgages*, 360. This question was considered and decided by this court, in the case of *Hertle and Wife* vs. *Schwartze and McDonald*—[*ante*, page 128]—in May last.

If Mackall Harris had been of age when the bond was given, or when it became forfeit, by the non-payment of the installment, in 1827, as more than twenty years intervened between that time, and the filing his bill in September, 1848, the presumption of payment would have defeated his recovery; and, even if he be entitled to the benefit of the proviso in the statute, inasmuch as he did not make his claim within the period limited by the proviso, he could not escape the force of the presumption.

There are, moreover, in this case, other circumstances entitled to much weight, in considering the question of the continued existence of the lien claimed for Mackall Harris. Looking at all the facts contained in the statement, I should be

strongly inclined to think, that he could not be permitted to set up the lien, as against the creditors of Alexander Harris, even, if the delay had not been so long. The bond of Alexander, as guardian, I presume, was responsible for the money with which he charged himself; and, the subsequent dealings between the parties, and the delay of Mackall to sue on the bond until after the death of Alexander, would, as I think, have furnished grounds upon which the court might have refused to enforce the lien. But, however this may be, I am of opinion, that the claim cannot now be asserted as a lien.

THOS. S. ALEXANDER for Kent.

A. RANDALL for Mackall Harris et al., heirs of Joseph Harris.